UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| RUDY STANKO, individually, and on behalf of similarly situated non-Indian residents on the Pine Ridge Indian Reservation and border towns;<br><br>            Plaintiff,<br><br>      vs.<br><br>AUSTIN CHAFFIN, individually, and in his official capacity as a Hot Springs policeman, and jailer BRANDON LUTHER, in his individual capacity;<br><br>            Defendants. | 5:18-CV-05088-KES<br><br><br>ORDER GRANTING AUSTIN CHAFFIN AND BRANDON LUTHER'S MOTIONS FOR SUMMARY JUDGMENT |

Plaintiff, Rudy Stanko, filed a pro se lawsuit alleging claims against

defendants, Austin Chaffin and Brandon Luther, under 42 U.S.C. § 1983, 28

U.S.C. § 1331, *Bivens v. Six Unknown Narcotic Agents*, 403 U.S. 388 (1971),

and state law. Docket 1.

This court dismissed Stanko's claims against James Sword, Judge Marya

Vrooman Tellinghusen, Carol Foster, and the State of South Dakota. Docket

21. The only remaining claim against Luther is a theft claim against him in his

individual capacity. *Id.* at 16.  All claims alleged against Chaffin remain. *Id.* at

25. Now, Chaffin and Luther move for summary judgment under Federal Rule of Civil Procedure 56.[1] Dockets 39, 45.

I.   **Legal Standard**

Pro se filings must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). Even with this construction, "a pro se [filing] must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); see also *Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013).

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet its burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party must inform the court of the basis for its motion and also identify the portions of the record that show there is no genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted).

---

[1] Stanko filed an Amended Complaint on February 20, 2020, almost a month after Luther filed his motion for summary judgment and over a month since Chaffin filed his motion for summary judgment. Docket 50. Federal Rule of Civil Procedure 15(a)(2) requires a plaintiff to obtain either defendant's consent or leave of court to amend his complaint. Because Stanko obtained neither, the amended complaint is stricken.

2

To avoid summary judgment, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. Cty. of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). Summary judgment is precluded if there is a genuine dispute of fact that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, the court views the facts and the inferences drawn from such facts " 'in the light most favorable to the party opposing the motion.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

This court's local civil rule states: "All material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's statement of material facts." D.S.D. Civ. LR 56.1(D). But "even if a motion for summary judgment on a particular claim stands unopposed, the district court must still determine that the moving party is entitled to judgment as a matter of law on that claim." *Interstate Power Co. v. Kan. City Power & Light Co.*, 992 F.2d 804, 807 (8th Cir. 1993).

## II.    Austin Chaffin's Motion for Summary Judgment

### A.    Factual Background

Viewing the evidence in the light most favorable to Stanko as the nonmoving party, including Chaffin's statement of undisputed material facts, to which Stanko did not object, the facts are:[2]

On November 10, 2018, Oglala Sioux Tribal Officer Nina Martinez stopped and arrested Stanko, a non-Indian, for a variety of different traffic offenses. Docket 1 ¶ 16; Docket 41 ¶ 1. The stop was within the confines of the Pine Ridge Reservation in Oglala Lakota County. Docket 6-1 at 4, 20. The next day, Stanko was transferred to the Fall River County jail. Docket 41 ¶ 2.  After Officer Martinez transported Stanko to the jail, Fall River County Jailer Brandon Luther asked Hot Springs Police Officer Austin Chaffin for help because Stanko was not complying with instructions. *Id.* ¶ 3. During all interactions with Stanko on November 11, 2018, Chaffin was on duty and acting in his official capacity as a police officer for the city of Hot Springs. *Id.* ¶ 4.

According to Stanko, Chaffin and Luther "threw and pinned" Stanko down on the floor of the jail and broke two of his fingers trying to get his Black Hills gold rings and watch off. Docket 51 ¶ 1. Stanko also alleges that Chaffin and Luther violated his Fourth Amendment rights when they "arrested, seized,

---

[2] Stanko did not file a statement of disputed material facts in response to Chaffin's motion for summary judgment. Under D.S.D. Civ. LR 56.1(D), all of Chaffin's statements of undisputed facts are deemed admitted. Stanko did file an affidavit in response to the motion for summary judgment. Docket 51. The court will consider that evidence in the light most favorable to Stanko.

finger printed, jailed, and threw" him in an "isolated cement silo without a judicial warrant" not supported by probable cause. *Id.* ¶ 2. According to Chaffin's undisputed statement of facts, Chaffin had only two interactions with Stanko. Docket 41 ¶ 5. The first interaction was in the booking room of the jail when Stanko was being noncompliant. *Id.* ¶ 6. During this time, Chaffin did not take anything from or off Stanko other than his boots. *Id.* After Stanko was told he could keep his jewelry on, he stopped resisting the efforts of Luther and Chaffin and walked into the holding cell without incident. *Id.* ¶ 7. The second interaction Chaffin had with Stanko occurred when Stanko walked to the holding cell. *Id.* ¶ 8. Chaffin did not touch Stanko or take anything from or off him during this brief interaction. *Id.* Other than the short time period while Stanko walked into the holding cell, Chaffin's entire interaction with Stanko is depicted on video from the booking room of the Fall River County jail. *Id.* ¶ 10.

Stanko admitted that Chaffin did not take his Black Hills Gold rings and watch, and the complaint does not allege that Chaffin stole or took anything from Stanko. *Id.* ¶¶ 11-12. The video from the booking room shows Chaffin did not steal anything from Stanko. *Id.* ¶ 14. Stanko alleges that others took $4,500 from his wallet and/or "stole over $4,000 from" his wallet. *Id.* ¶ 13. Specifically, Stanko alleges that both Chaffin and Luther violated his rights when they "stole over $4000" from his wallet. Docket 51 ¶ 3. When Stanko was booked into the jail, Officer Luther took an inventory of Stanko's property and placed it into a locker. Docket 41 ¶ 16. Stanko had $925.65 in cash when he was booked into the jail. *Id.* ¶ 17.

Stanko alleges that Chaffin and Luther violated his Eighth Amendment right by "throwing" him in an "isolated cement ice cold silo without a mattress or blankets for thirty (30) hours instead of setting bail." Docket 51 ¶ 4. According to Chaffin's statement of undisputed facts, Stanko was released from the jail on November 11, 2018, with all his belongings. Docket 41 ¶ 18. He signed a Property Inventory Report (PIR) that stated, "the above listed items are an accurate accounting of my property." *Id.* The PIR showed Stanko's boots and $925.65 in cash were returned to him once he was released from the jail, which was confirmed by Stanko's initials on the jail log for that date. *Id.* ¶¶ 19-20. On the video from the booking room, Stanko can be heard numerous times admitting that he did not have $2,000 to post bond but only had $1,000 or $900 and his rings. *Id.* ¶ 21.  Later, Stanko said he only had $950. *Id.*

**B.    Legal Analysis**

When the court addressed the other defendants' motions to dismiss, claims against Chaffin were not considered because Chaffin did not move to dismiss. Docket 21 at 25. Chaffin now moves for summary judgment regarding each of Stanko's claims. Docket 39.

**1.    Official Capacity Claims**

Stanko sues Chaffin, a police officer for the Hot Springs Police Department, in his official capacity. Docket 1 at 1. "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Thus, Stanko's official capacity claims

6

against Chaffin are equivalent to claims against the City of Hot Springs. A municipal government may only be sued "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). Because Stanko does not claim that the policies or customs of the City of Hot Springs are depriving him of his rights, Chaffin is entitled to summary judgment as a matter of law on Stanko's claims against him in his official capacity.

### 2.    Individual Capacity Claims

Along with official capacity claims, Stanko alleges claims against Chaffin in his individual capacity. Docket 1 at 1. Chaffin alleges that because of his position as a police officer for the City of Hot Springs, he is protected from individual liability under the qualified immunity doctrine. Docket 40 at 10. "Qualified immunity shields a public official from damage liability unless the official's actions violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *S.M. v. Krigbaum*, 808 F.3d 335, 339 (8th Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). " To overcome the defense of qualified immunity the plaintiff must show that: '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.' " *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (quoting *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009)).

If either part is answered in the negative, the officer is entitled to qualified immunity. *Norris v. Engles*, 494 F.3d 634, 637 (8th Cir. 2007). "The party asserting qualified immunity has the burden to establish the relevant predicate facts, and at the summary judgment stage, the nonmoving party is given the benefit of all reasonable inferences." *White v. McKinley*, 519 F.3d 806, 813 (8th Cir. 2008) (citing *Pace v. City of Des Moines*, 201 F.3d 1050, 1056 (8th Cir. 2000)). " 'The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.' " *Pace*, 201 F.3d at 1052 (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

### a.    Eighth Amendment Claims

Stanko alleges that Chaffin violated his constitutional rights under the Eighth Amendment. Docket 1 at 14. He claims that Chaffin was deliberately indifferent to his serious medical need when Stanko's fingers were broken. *Id.* Stanko further alleges that the conditions of his jail cell in Fall River County amount to a constitutional violation. *Id.*; Docket 50 at 8. Chaffin argues that he is entitled to qualified immunity on these claims. Docket 40 at 10, 13.

The Eighth Amendment prohibits cruel and unusual punishment. *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015). This prohibition includes deliberate indifference to a prisoner's serious medical needs or to inhumane conditions of confinement. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008). Because Stanko was a pretrial detainee, his claims fall under the Fourteenth

8

Amendment rather than the Eighth Amendment, but the standard to show deliberate indifference is the same. *Hartsfield v. Colburn*, 371 F.3d 454, 456-57 (8th Cir. 2004); *see also Vaughn v. Gray*, 557 F.3d 904, 908 n.4 (8th Cir. 2009).

"[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. The deliberate indifference standard includes both an objective and subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). The plaintiff must show "(1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Id.* "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (internal quotation omitted). " 'Constructive knowledge, or the should have known standard, is not sufficient to support a finding of deliberate indifference. . . .' " *Thunder Hawk-Gallardo v. Wendling*, No. 4:17-CV-04001-KES, 2018 WL 4334068, at *12 (D.S.D. Apr. 2, 2018) (quoting *Spruce v. Sargent*, 149 F.3d 783, 786 (8th Cir. 1988)).

Here, Stanko fails to allege a constitutional violation against Chaffin regarding his broken fingers. This court has previously found that a broken finger is a non-serious medical condition. *See Gard v. Dooley*, No. 4:14-CV-04023-LLP, 2016 WL 5376236, at *31 (D.S.D. Mar. 4, 2016). Because a broken finger is not a serious medical need, Stanko fails to raise a genuine issue of

9

material fact that he suffered from an objectively serious medical need.

Stanko's claim does not amount to a constitutional violation under *Dulany*.

132 F.3d at 1239. Because Stanko has not raised a genuine issue of material

fact that he suffered from an objectively serious medical need, Chaffin is

entitled to qualified immunity on Stanko's Eighth Amendment medical

indifference claim.

Stanko also fails to allege a constitutional violation as to the conditions

of his jail cell in Fall River County. "[T]he Constitution 'does not mandate

comfortable prisons;' it prohibits 'inhumane ones.' " *Williams v. Delo*, 49 F.3d

442, 445 (8th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832

(1994)). To allege that conditions of confinement violate the Eighth

Amendment, Stanko must assert that "the alleged deprivation is 'objectively,

sufficiently serious,' resulting 'in the denial of the minimal civilized measure of

life's necessities,' " and that Chaffin was "deliberately indifferent to 'an

excessive risk to [Stanko's] health or safety . . . .' " *Id.* (quoting *Farmer*, 511

U.S. at 834).

In his complaint, Stanko alleges that Chaffin violated his Eighth

Amendment rights by "throwing the Plaintiff in [an] isolated cement ice cold silo

without a mattress or blankets for thirty (30) hours . . . ." Docket 50 at 8. In his

statement of undisputed material facts, Chaffin does not address the

conditions of the cell into which Stanko was placed. See Docket 41. Chaffin

does not mention speaking to Stanko about the alleged conditions and does not

mention Stanko complaining about the conditions of the cell. *See id.* Because

Stanko did not file a statement of disputed facts, the only facts Stanko asserts about the conditions in his cell are found in his original complaint. See Docket 1 ¶ 31.

Here, Stanko fails to show that being held in a cold holding cell with no mattress is a constitutional violation. Other district courts have held that cold temperatures that are " 'extreme and long-lasting may create a condition sufficiently harsh to violate the Eighth Amendment.' " *Clark v. Spey*, 2002 WL 31133198, at *2 (N.D. Ill. Sept. 26, 2002) (quoting *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997)). The record indicates that Stanko was released from his holding cell on the same day he was booked into the jail. Docket 41 ¶¶ 8, 18. Stanko makes no showing that being held in a cold cell for 30 hours with no blanket or mattress was a sufficiently serious deprivation "resulting in the denial of the minimal civilized measure of life's necessities." *Williams*, 49 F.3d at 445 (internal quotation omitted). Furthermore, even if Stanko had raised a genuine issue of material fact that the conditions of his confinement were unconstitutional, he has failed to show a genuine issue of material fact as to whether Chaffin was deliberately indifferent to an excessive risk to Stanko's health or safety as required by *Williams*. *Id.*

Thus, because Stanko has failed to show a genuine issue of material fact supporting the existence of a Fourteenth or Eighth Amendment constitutional violation, Chaffin is entitled to qualified immunity in his individual capacity. Thus, Chaffin's motion for summary judgment is granted with respect to these

Eighth Amendment claims regarding Stanko's broken fingers and the conditions of Stanko's confinement.

### b. Fourth Amendment Claims

Stanko further alleges violations of his Fourth Amendment rights based upon being "throw[n] in an isolated cement silo without a judicial warrant" that was "not supported by . . . probable cause." Docket 50 at 7. Under South Dakota law, a law enforcement officer may, without a warrant, arrest a person:

(1) For a public offense, other than a petty offense, committed or attempted in his presence; or
(2) Upon probable cause that a felony or Class 1 misdemeanor has been committed and the person arrested committed it, although not in the officer's presence.

SDCL § 23A-3-2. Here, Stanko was stopped on the Pine Ridge Reservation by Officer Martinez for numerous offenses, including Eluding (a Class I misdemeanor in violation of SDCL § 32-33-18.1), Reckless Driving (a Class I misdemeanor in violation of SDCL § 32-24-1), Careless Driving (in violation of SDCL § 32-24-8), Disorderly Conduct (in violation of SDCL § 22-18-35(1)), Turn Signal Violation (in violation of SDCL § 32-26-22), and Speeding (in violation of SDCL § 32-25-1.1). Docket 1 at 9-10. Based on the allegations that probable cause existed to prove that Stanko committed both the Eluding and Reckless Driving charges, the police were within their rights under South Dakota law to arrest Stanko without a warrant. Both charges are violations of a Class 1 misdemeanor. Thus, Chaffin did not violate Stanko's rights by accepting Stanko at the Fall River County jail because the officer who stopped Stanko had probable cause to arrest him.

Considering the facts viewed in the light most favorable to Stanko, he has not raised a genuine issue of material fact that there was not probable cause for his arrest. The record is void of factual allegations that would support a violation of Stanko's constitutional rights under the Fourth Amendment. Based on Stanko's failure to raise a genuine issue of material fact to support a violation of his constitutional rights under the Fourth Amendment, Chaffin is entitled to qualified immunity. Chaffin's motion for summary judgment regarding Stanko's Fourth Amendment claims is granted.

### c.   Conspiracy

In Count Seven of the complaint, Stanko alleges there was a conspiracy by all defendants to commit false imprisonment in violation of his Eighth Amendment rights. Docket 1 at 15. The court will analyze the conspiracy claim as it relates to Chaffin because all the other defendants were previously dismissed.

First, to the extent Stanko's pleadings can be construed as a conspiracy claim under § 1983, Stanko must show "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." *Livers v. Schenck*, 700 F.3d 340, 360-61 (8th Cir. 2012) (citation omitted). "The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 conspiracy claim." *White*, 519 F.3d at 814 (8th Cir. 2008) (citing *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999)). A plaintiff can use

13

circumstantial evidence to show a conspiracy; a plaintiff bringing a § 1983 conspiracy claim must allege "specific facts tending to show" that defendants reached an agreement to deprive the plaintiff of a constitutional right or meeting of the minds. *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010). Thus, Stanko must allege with particularity "facts that the defendants reached an agreement." *Reasonover v. St. Louis Cty.*, 447 F.3d 569, 582 (8th Cir. 2006) (internal quotation omitted).

A plaintiff must plead "more than the mere recitation of an improper state of mind such as malice, bad faith, retaliatory motive or conspiracy . . . ." *Myers v. Morris*, 810 F.2d 1437, 1453 (8th Cir. 1987), *overruled on other grounds by Burns v. Reed*, 500 U.S. 478 (1991). A "belief that a crime has been committed is not a conspiracy. Various people engaged in investigating . . . suspected criminal activity does not amount to conspiracy. [Courts] look for a genuine factual issue of concerted activity toward an unlawful objective." *Id.* at 1454.

Second, to state a claim under § 1985 the plaintiff must allege:

(1) the defendants conspired, (2) for the purpose of depriving any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws, that (3) one or more of the conspirators did or caused to be done any act in furtherance of the conspiracy, and (4) as a result, another was injured in his person or property or deprived of having and exercising any vital privilege of a citizen.

*Dubray v. Rosebud Hous. Auth.*, 565 F. Supp. 462, 466 (D.S.D. 1983). Just as with a conspiracy claim under § 1983, there must be some showing of facts to support a conspiracy claim. *Jensen v. Henderson*, 315 F.3d 854, 862 (8th Cir.

14

2002). "It is well settled that conclusory allegations of a conspiracy are insufficient to state a claim under § 1985(3)." *Dubray*, 565 F. Supp. at 466 (citation omitted). "[E]vidence of purposeful discrimination must be produced to avoid dismissal of a § 1985(3) claim." *Schmidt v. Louise Big Boy*, No. 05-CV-05036-KES, 2007 WL 858419, at *10 (D.S.D. Mar. 20, 2007).

Stanko fails to raise a genuine issue of material fact regarding any element of a civil conspiracy under § 1983 or a private conspiracy based on class or race under § 1985(3). Stanko's pleadings fail to allege specific facts that would give rise to an inference of the existence of a conspiracy or meeting of the minds between Chaffin or any other named defendants. Stanko also fails to plead purposeful discrimination or allege any facts that show the defendants were engaged in a private conspiracy premised on class or race. Stanko's complaint only demonstrates non-specific conclusory statements about a "conspirator[] clique" group—one that Chaffin was not mentioned as being a part of. Docket 1 ¶ 54.

Furthermore, Stanko has failed to plead any genuine factual issue of Chaffin engaging in a concerted activity toward an unlawful objective. Just because Stanko believes individuals like Chaffin have conspired against him, his allegations, supported by mere conclusory statements, are not enough. Stanko fails to raise a genuine issue of material fact that Chaffin conspired against him under 42 U.S.C. §§ 1983 or 1985(3). Thus, Chaffin is entitled to qualified immunity regarding Stanko's conspiracy claim.

### d.    Theft

Stanko's original complaint, while not specifically naming Chaffin, alleges Luther and defendants "1X thru 4x" stole over $4,000 from Stanko's wallet. Docket 1 at 14. Chaffin is not specifically mentioned by name in the original complaint's theft of $4000 claim. See *id.* Yet, Chaffin is mentioned along with Luther as having taken Stanko's Black Hills Gold rings and watch. Id. In Stanko's amended complaint and affidavit, Stanko alleges that both Luther and Chaffin stole over $4000 from Stanko's wallet. *Id.*; Docket 50 at 7-8; Docket 51 ¶ 3.

Stanko's allegation that Chaffin stole $4000 from him is conclusory. Mere allegations and conclusory statements are insufficient to preclude summary judgment. *Dunavant v. Moore*, 907 F.2d 77, 80 (8th Cir. 1990). "Instead, the plaintiff must present affirmative evidence in order to defeat" summary judgment. *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)). Here, Stanko does not set forth any specific facts or affirmative evidence to support his allegation. *See Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998) ("Conclusory affidavits, standing alone, cannot create a genuine issue of material fact precluding summary judgment."). Additionally, the statement made in Stanko's affidavit and amended complaint contradict his statement made in his original complaint. *See Johnson v. City of St. Paul*, 634 F.2d 1146, 1147 n.5 (8th Cir. 1980) (stating the district court was entitled to construe affidavit opposing summary judgment as conclusory and insufficient to raise an issue of material fact because the allegation in the

16

affidavit conflicted with allegation in the complaint and other material submitted to the court). Thus, Stanko's theft claim against Chaffin fails to meet the legal standard required to survive a motion for summary judgment with respect to the facts alleged in his affidavit.

Chaffin's statement of undisputed facts state that Chaffin did not take his Black Hills Gold rings and watch. Docket 41 ¶ 11. Stanko did not object to this statement, so it is deemed admitted. Video evidence from the Fall River County jail booking room also shows that Chaffin did not steal anything from Stanko and that he did not take any money, the gold rings, or the watch. *Id.* ¶ 14. Furthermore, when Stanko was booked into the jail, Luther took an inventory of Stanko's property and placed it into an on-site locker. *Id.* ¶ 16.

Upon being booked into the jail, Stanko had $925.65 in cash. *Id.*  ¶ 17. When he was released on November 11, 2018, he left the jail with all his property and with his original $925.65 in cash. *Id.* ¶¶ 18-19. The jail log dated November 11, 2018 that was initialed by Stanko both for "in" and "out" confirms he was given his cash when he was released on that same date. *Id.* ¶ 20. Moreover, Stanko has not provided the court with any new evidence to dispute Chaffin's factual record. *Id.* ¶ 22; see Docket 50. As a result, no genuine issue of material fact exists regarding Stanko's theft claim. Thus, the court grants Chaffin's motion for summary judgment in this respect.

### III.   Brandon Luther's Motion for Summary Judgment

#### A.   Factual Background

Viewing the evidence in the light most favorable to Stanko as the nonmoving party, including the Luther's statement of undisputed material facts, to which Stanko did not object, the facts are:[3]

Luther is employed by the Fall River County Sheriff's Office as a jailer. Docket 46 ¶ 1. Luther is responsible for booking in arrestees upon their arrival to the jail and is familiar with the booking procedures and logging of property belonging to those arrestees. *Id.* ¶ 2. On the afternoon of November 11, 2018, Luther began the booking process of Stanko after he was transported to the jail. *Id.* ¶¶ 3, 5. Each item received from Stanko at the time of booking was inventoried. *Id.* ¶ 6. Stanko alleges that Luther and Chaffin "threw and pinned" him down on the floor and broke two of his fingers trying to get the Black Hills gold rings and watch off his fingers and wrist. Docket 51 ¶ 1. Furthermore, Stanko asserts violations of his constitutional rights, alleging that Luther and Chaffin "arrested, seized, finger printed, jailed, and threw" him in an "isolated cement silo without a judicial warrant" not supported by probable cause, along with "throwing" him in the "isolated cement ice cold silo without a mattress or blankets for thirty (30) hours instead of setting bail." *Id.* ¶¶ 2, 4.

---

[3] Stanko did not file a statement of disputed material facts in response to Luther's statement of material facts. Under D.S.D. Civ. LR 56.1(D), all of Luther's statements of undisputed material facts are deemed admitted. Stanko did file an affidavit in response to the motion for summary judgment. Docket 51. The court will consider that evidence in the light most favorable to Stanko.

According to the "Fall River Sheriff's Office Prisoner's Booking Record," the "TotalCash" received from Stanko at the time of booking was the same amount returned to him upon his release from jail. Docket 46 ¶¶ 7-8. Stanko did not have any other cash on him when he arrived at the jail. *Id.* ¶ 9. No additional cash was logged into the jail as belonging to Stanko. *Id.* ¶ 10. Luther did not take possession of any money belonging to Stanko other than the $925.65, which was logged in and returned to him upon his release. *Id.* ¶ 14. Stanko initialed the property log showing the $925.65 was logged "in" and "out" of the jail and signed a report signaling he was released with that same amount in cash. *Id.* ¶¶ 16-17. But Stanko alleges that Luther and Chaffin violated his rights "when they stole over $4000" from his wallet. Docket 51 ¶ 3.

Stanko gave jail workers differing accounts of the amount of money he possessed on his person when he was booked at the jail. When Stanko was asked if he had $2,000 in cash to post bond, he told the jailer and bail bondsman on separate occasions that he had $900 to $1000 on his person at the jail. Docket 46 ¶¶ 19-23. Stanko later told a bail bondsman that he had $950 with him at the jail. *Id.* ¶ 24. Luther then told Stanko that he came in with $925.65 to which he responded "alright," and signed for the funds. *Id.* ¶ 26. Later that evening, Stanko handed the bail bondsman $900 and said that doing so left him with $20. *Id.* ¶ 28.

## B.   **Legal Analysis**

Stanko sued Luther in both his individual capacity and his official capacity. Docket 1 at 1. Stanko's claims against Luther in his official capacity

were dismissed. Docket 21 at 12, 18. Now, the only remaining claim against Luther is a theft claim in his individual capacity. *Id.* at 16, 18. Luther now moves for summary judgment under Federal Rule of Civil Procedure 56. Docket 45.

Stanko alleges that Luther and "defendants 1X thru 4x" stole over $4,000 from his wallet. Docket 1 at 14. Each item received from Stanko at the time of booking at the jail was inventoried. Docket 46 ¶ 6. In the booking record, the "TotalCash" received at the time of booking was $925.65 and that same amount of money was returned to him upon his release from jail. *Id.* ¶¶ 7-8. No additional money was logged into the jail as belonging to Stanko. *Id.* ¶ 10. Video surveillance from the night of November 11, 2018, presented instances where Stanko admitted to possessing anywhere from $900 to $1000 on his person. *Id.* ¶¶ 19-23.

As stated before, mere allegations and conclusory statements are insufficient to preclude summary judgment. *Dunavant*, 907 F.2d at 80. Here, the record fails to reveal any evidence supporting Stanko's theft claims and Stanko's amended complaint fails to allege any new facts supporting his claims. See Dockets 46, 50. Because Stanko has not raised a genuine issue of material fact that his property was taken from him, Luther's motion for summary judgment is granted.

## CONCLUSION

Thus, it is ORDERED:

1. That Austin Chaffin's motion for summary judgment (Docket 39) is granted.

2. That Brandon Luther's motion for summary judgment (Docket 45) is granted.

Dated July 31, 2020.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE